IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT J. POZZUOLO,** *and all others similarly situated,* | : <br> : Case No. 2:18-cv-01797-TJS <br> : |
| **Plaintiff,** | : <br> : |
| v. | : <br> : |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC** | : <br> : <br> : |
| **Defendant.** | : |

**DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(1)**

Defendant Portfolio Recovery Associates, LLC respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

**INTRODUCTION**

On March 30, 2018, PRA sent Plaintiff Robert J. Pozzuolo its initial communication in connection with its efforts to collect a delinquent debt originally owed to Capital One Bank (USA), N.A. The front of the letter contained the disclosures required by 15 U.S.C. § 1692g(a) of the Fair Debt Collection Practices Act ("FDCPA"), instructing Plaintiff of the timeframe within which to dispute his debt and the types of information PRA would provide to him in response. ECF 1, Exhibit A. The back of the letter contained a number of notices, including one reading, "**DISPUTES:** Call 800-772-1413 or write to:

1

Portfolio Recovery Associates, LLC, Disputes Department, 140 Corporate Blvd., Norfolk, VA 23502." *Id.*

Plaintiff never called or wrote to PRA.  Plaintiff never disputed the account, nor did he ever intend to.  And had Plaintiff called PRA, he would have discovered that PRA accepts, investigates, and responds to disputes regardless of how they are made.  Instead, having done none of these things, he briefly reviewed some of the letter before forwarding it to his long-time legal counsel, resulting in this single-count Class Action Complaint.  In this case, Plaintiff alleges that the inclusion of a telephone number on the back of the letter violates § 1692g of the FDCPA by overshadowing the validation notice on the front of the letter because, in the Third Circuit, disputes made pursuant to § 1692g of the FDCPA must be written in order to be "legally effective."

"Article III standing requires a concrete injury" even in the context of a statutory violation. *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016).  But in this case, Plaintiff has not shown – and indeed, has made no effort to show – that PRA's alleged overshadowing of the validation notice by the inclusion of a telephone number on the back of the letter has caused him any harm beyond what can only be characterized as a bare procedural violation.  In the absence of such harm, Plaintiff lacks standing to pursue his claims, as there exists no "case" or "controversy" for this Court to adjudicate.  Consequently, Plaintiff's claims should be dismissed.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) provides that a court must dismiss matters over which it lacks subject matter jurisdiction. Such challenges may be facial or factual in form. A facial challenge attacks the complaint on its face, while a factual challenge contests the existence of subject matter jurisdiction apart from any specific pleading. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

As the Third Circuit explained in *Mortensen*, significant differences exist between facial and factual attacks. In evaluating a facial challenge, the court is bound to accept a plaintiff's allegations as true. *Mortensen*, 549 F.3d at 891. By contrast, when weighing a factual challenge,

> The trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims.

*Id.* A court may hear a factual challenge at any time, "from the time the answer has been served until after the trial has been completed." *Id.* at 891-92. Plaintiff bears the burden of proving the court has subject matter jurisdiction. *Id.* at 891; *see also Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Marlee Elecs. Corp. v. Eclectic Technologies Corp.*, 1993 U.S. Dist. LEXIS 1123 at *17-18 (E.D. Pa. 1993).

3

Here, the record demonstrates that Plaintiff has not suffered any injury-in-fact as required by Article III of the U.S. Constitution. As such, this Court lacks subject matter jurisdiction over Plaintiff's claim, and his Class Action Complaint should be dismissed.

## ARGUMENT

**A.     Article III Standing Requires Concrete Harm.**

"Article III of the U.S. Constitution does not authorize federal courts to decide theoretical questions." *Hagy v. Demers & Adams,* 882 F.3d 616, 620 (6th Cir. 2018). Instead, it affords federal courts the judicial power to hear only concrete "Cases" and "Controversies." U.S. Const. art. III, § 2; *see also Lance v. Coffman,* 549 U.S. 437, 439 (2007). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 136 S. Ct. at 1547 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). As the party invoking federal jurisdiction, Plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny County Court of Common Pleas,* 75 F. 3d 834, 838 (3d Cir. 1996) (quoting *Lujan,* 504 U.S. at 561); *see also Spokeo,* 136 S. Ct. at 1547 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.").

4

Focusing on the first element, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'").

Critically, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* As a result, a plaintiff may "not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing")) (additional citation omitted).

Here, Plaintiff cannot establish that he sustained an injury-in-fact. Indeed, he readily admits he incurred no harm as a result of PRA's letter (which, by his own admission, he merely "scanned"). He neither disputed the debt nor had any intention of doing so. Instead, Plaintiff's purported "injury" rests on the alleged failure to effectively provide him with the information required by § 1692g(a) – put another way, Plaintiff claims PRA's procedural violation of the FDCPA *is itself* an injury-in-fact. But Congress may not "enact an injury into existence," *Hagy*, 882 F.3d at 622. As the record in this case establishes, Plaintiff neither sustained nor was at imminent risk of sustaining *any* harm, let

5

alone the harms § 1692g was enacted to prevent. As a result, PRA's alleged procedural violation of the FDCPA cannot constitute a concrete injury sufficient to satisfy Article III's injury-in-fact requirement, and Plaintiff's claims should be dismissed.

> **B.     The alleged procedural violation of 15 U.S.C. § 1692g, in and of itself, is not an injury-in-fact.**

Although Congress may create statutory rights, it cannot create injury where none exists. Thus, plaintiffs bringing statutory claims must still establish some injury, separate and apart from the violation of a statutory requirement, in order to satisfy Article III's requirements. Congress may take concrete, *de facto* injuries that were previously "inadequate in law" and raise them to the status of legally cognizable harm, *Lujan*, 504 U.S. at 578, but it "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy*, 882 F.3d at 622 (citing *Spokeo*, 136 S. Ct. at 1548-49). As the Third Circuit noted in *Doe v. Nat'l Bd. Of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999), "[t]he proper analysis of standing focuses on whether the plaintiff has suffered an actual injury, not on whether a statute was violated."

Thus, while Congress can *expand* standing, it cannot *confer* standing through legislation. The *Spokeo* Court reiterated this long-standing sentiment, noting that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. Put

6

another way, while Congress may create new *rights* (such as the right to receive the notice required by § 1692g(a)) and new *remedies* (such as the right to sue when the notice is not provided), Congress cannot create a new *injury* out of thin air. Rather, litigants invoking federal courts' jurisdiction must demonstrate they experienced some actual, identifiable injury, rather than merely demonstrating violation of a statutory requirement.

Although there are some circumstances where a procedural violation of a statute alone may yield a concrete injury, *see Spokeo*, 136 S. Ct. at 1549, no such injury arises here. Indeed, where such injury has been found, the statutory violations defeated the purpose of the statute, which were to address real harms flowing from the lack of access to information in the political process. *See Federal Election Commission v. Akins*, 524 U.S. 11, 14, 21 (1998) (voter's inability to get information pursuant to the Federal Election Campaign Act, which "seeks to remedy actual or perceived corruption in the political process," established injury in fact); *Public Citizen v. Department of Justice*, 491 U.S. 440, 445-46, 449 (1989) (advocacy organization's inability to obtain information pursuant to the Federal Advisory Committee Act, which ensures that the public remains apprised of the activities of groups advising the executive branch, was a distinct injury sufficient to provide standing). Thus, both *Akins* and *Public Citizen* simply exemplify Congress' power to "elevate intangible harm" to the status of legally cognizable harm. In other words, these statutes merely took concrete harms already in existence and made them actionable; neither case held that the mere

deprivation of information, in and of itself, constituted an injury-in-fact for Article III purposes.

No such harm automatically occurs from a violation of § 1692g. Section 1692g(a) requires a debt collector to provide the consumer with the following notice either in the debt collector's initial communication with the consumer or within five days of such initial communication:

> a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty- day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(b) also provides that other language in the communication cannot be inconsistent with, or overshadow, the notice required by § 1692g(a).

Taken together, 15 U.S.C. § 1692g(a) and (b) provide consumers with procedural rights, the purpose of which is to decrease the likelihood that a debt collector will seek collection of a debt from the wrong person or for an amount already paid. *See* S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. By enacting § 1692g, Congress identified intangible harms – debt

collectors collecting the wrong debts from the wrong people – and raised them to "actionable legal status." *Hagy*, 882 F.3d at 622. What Congress did *not* do, however, is decree that a failure to effectively convey a consumer's rights under § 1692g(a) *always* creates a particularized and concrete injury. Clearly, Congress anticipated specific circumstances in which a procedural statutory violation – the failure to provide a consumer with his or her validation rights – may cause concrete harm, such as when a debt collector duns the wrong person or seeks to collect a debt the consumer has already paid. These harms, however, are not present here.

In *Hagy*, the Sixth Circuit held that the plaintiff lacked standing where the defendant failed to include the § 1692g(a) disclosures at all and the disclosure under § 1692e(11). 882 F.3d at 619, 622. The court explained that "[n]ot all procedural violations, not even all inaccuracies, cause real harm." *Id.* at 621. And "[n]owhere in the Act (or for that matter the legislative record) does Congress explain why the absence of such a warning *always* creates an Article III injury." *Id.* at 622. Thus, because the plaintiffs in that case failed to show how they suffered any harm beyond the "bare procedural violation," they lacked Article III standing. *Id.*

The same result is warranted here. In this case, in which Plaintiff agrees PRA sought collection of the right debt from the right person, Plaintiff cannot credibly argue he suffered the type of § 1692g was specifically designed to address. Indeed, he readily admits he has sustained no harm, tangible or otherwise. He did not call PRA only to be denied the right to dispute the debt.

9

He did not call PRA only to be lulled into a false sense of security that PRA would act on his "legally ineffective" verbal dispute. In fact, Plaintiff responded just as he has to every collection notice he has received in years past: he skimmed it, then sent it to his lawyer.  This case presents a textbook example of an alleged procedural violation resulting in *no harm*.  Because the record shows the absence of any cognizable injury-in-fact, the Court must dismiss this case for lack of standing.

### C. Plaintiff incurred no harm and was at no risk of imminent injury.  Thus, he incurred no concrete injury.

Section 1692g of the FDCPA requires debt collectors to provide consumers with notice of certain rights – commonly called the "validation notice" – within five days after the initial communication with a consumer in connection with the collection of a debt.  15 U.S.C. § 1692g(a).  If a consumer exercises those rights within thirty days of receipt of the debt collector's notice, the debt collector must cease collection of the debt until it can provide the consumer with verification of the account.  15 U.S.C. § 1692g(b). The purpose of the validation process, according to Congress, is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."  *See* S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699.

Here, Plaintiff does not dispute that the front of the letter at issue in this case contains the full text of the notice required by 15 U.S.C. § 1692g(a)(3)-(5). Instead, Plaintiff alleges that the validation notice is overshadowed by language appearing on the back of the letter – specifically, beneath PRA's payment and

10

company addresses, there appears a line reading, "**DISPUTES:** Call 1-800-772-1413 or write to...." Plaintiff complains that in the Third Circuit, "only a *written* dispute is sufficient to trigger the debt collector's obligation to cease collection until it verifies the debt." *See* ECF 1, ¶ 4 (internal citations omitted). For this reason, Plaintiff alleges that the presence of a disputes phone number on the back of the letter overshadows the validation rights on the front of the letter, and thus violates § 1692g(b). *Id.*

Although PRA disputes the merits of the claim, the evidence establishes that any purported failure to "effectively" convey his rights under § 1692g(a) caused Plaintiff no injury whatsoever, let alone a concrete and particularized one. During his deposition Plaintiff confirmed PRA was collecting the right debt, in the right amount from the right person:

> Q: Just to confirm, I asked you to set that aside, I ask that you put it back in front of you, Exhibit 1, please. And if you look at Exhibit A in the back, the letter, do you see there's a current balance of $423.09?
>
> A: Yes.
>
> Q: Do you have any reason to dispute that that amount is accurate?
>
> A: I have no reason to dispute it.
>
> Q: You agree that you did at one time owe a balance of some amount to Capital One; correct?
>
> A: Correct.
>
> Q: And you did not pay that amount?
>
> A: Correct.

> Q: Have you ever paid the amount?
>
> A: No.

See Exhibit A, Deposition of Robert J. Pozzuolo, 47:15-24, 48:1-8. He takes no issue with the validity of the debt or his responsibility for it. *Id.* at 32:18-20, 47:15-23.

Plaintiff also readily acknowledged he incurred no harm as a result of receiving the letter:

> Q: Have you lost wages as a result of receiving the letter?
>
> A: No.
>
> Q: Were you hurt as a result of receiving the letter?
>
> A: No.
>
> …
>
> Q: You can answer.
>
> A: Other than not enjoying seeing the letter. Physically getting hurt, no.
>
> Q: You didn't like to see the letter because it reminded you that you owed a debt that you had not paid; is that fair?
>
> A: Yes, and obviously my credit is going down.
>
> Q: Yes, but you don't dispute the debt itself; right?
>
> A: No, I do not.

*Id.* at 31:25, 32:1-20.

Plaintiff cannot establish that he even read the disputes telephone number provided in the letter. In fact, n the last three (3) years, Plaintiff has received debt collection letters from Capital One, Temple Physicians, Synchrony Bank,

12

and Citibank. *Id.* at 20:21-24, 21:1. Plaintiff does not read the letters he receives in their entirety; instead, he merely "scans over them" before sending them to his counsel to determine "what should or should not be on there." *Id.* at 16:8-11, 16-24, 17:1-2, 18-20. Indeed, this is precisely what Plaintiff did here: after scanning his letter, he sent it to his counsel to determine whether it contained any violations of the FDCPA. *Id.* at 37:1-9. He does not call or write to the companies sending him the debt collection letters, and he does not dispute the debts when he receives debt collection letters. *Id.* 17:21-24, 18:1-5. And in this case, he never contacted PRA, whether in writing or otherwise – he did not dispute the account or have any intent to dispute the account, because he agrees that the account information in PRA's letter is accurate. *Id.* at 47:12-24, 48:1-8.

Plaintiff's admission that the debt was valid and that he would never dispute it not only establishes that he suffered no harm, but also that he had no risk of a future harm from the purported violation. The United States Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact' and that 'allegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty International USA*, 568 U.S. 398, 133 S. Ct. 1138, 1147 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717 (1990)). Here, no such impending injury exists: Plaintiff testified unequivocally that he did not dispute his debt, he had no intention of disputing his debt, and his sole course of action upon receipt of debt collection letters is to transmit them to his counsel for review and potential litigation, without even

reading them in their entirety as consumers are required to do. *See Campuzano-Burgos v. Midland Mgmt., Inc.*, 550 F.3d 294, 298-99 (3d Cir. 2008). This is the very type of statutory violation which, devoid of concrete injury, is insufficient to satisfy Article III's injury-in-fact requirement.

To avoid this result, Plaintiff seeks to manufacture a risk of future harm by speculating that debt collectors may encourage consumers to make verbal dispute, then refuse to honor them, leaving consumers with no recourse after expiration of the 30-day validation period. *See* Exhibit B, Deposition of Susan Guevara, 115:2-6; 116:7-9. But "Article III of the U.S. Constitution does not authorize federal courts to decide theoretical questions." *Hagy*, 882 F. 3d at 620. *Plaintiff* never called PRA to dispute his account (nor did he intend to), and thus any speculation as to what PRA *might have done*[1] had he called the number on the back of the letter is clearly insufficient to constitute concrete risk of future harm.

Because Plaintiff testified unequivocally that he experienced no harm upon receiving PRA's letter, has fallen well short of establishing the existence of an injury-in-fact sufficient to satisfy Article III. Accordingly, the Court should dismiss this case.

**CONCLUSION**

---

[1] In fact, had Plaintiff called PRA to dispute his account, PRA would have afforded him the same rights he would have enjoyed had he sent PRA a written dispute. PRA treats all disputes the same, regardless of whether they are verbal or written. *See* Exhibit B, Deposition of Susan Guevara, 48:11-18, 49:6-14.

For the foregoing reasons, Defendant Portfolio Recovery Associates respectfully requests that this Honorable Court grant its Motion and dismiss this case for lack of jurisdiction.

Respectfully submitted,

**MESSER STRICKLER, LTD.**

By: */s/ Lauren M. Burnette*
LAUREN M. BURNETTE, ESQUIRE
PA I.D. No. 92412
12276 San Jose Blvd.
Suite 720
Jacksonville, FL 32223
(904) 527-1172
(904) 683-7353 (fax)
lburnette@messerstrickler.com
Counsel for Portfolio Recovery Associates, LLC

**MCGUIRE WOODS, LLP**

JARROD D. SHAW, ESQUIRE
PA I.D. No. 93459
260 Forbes Ave.
Suite 1800
Pittsburgh, PA 15222
(412) 667-7907
(412) 402-4193 (fax)
jshaw@mcguirewoods.com
Counsel for Portfolio Recovery Associates, LLC

ADAM T. SIMONS, ESQUIRE
PA I.D. No. 322256
500 E. Pratt St.
Suite 1000
Baltimore, MD 21202
(410) 659-4417
(410) 659-4484 (fax)
Counsel for Portfolio Recovery Associates, LLC

Dated:  October 29, 2018

**CERTIFICATE OF SERVICE**

I certify that on October 29, 2018, I served a true and correct copy of the foregoing document on all counsel of record *via* CM/ECF.

**MESSER STRICKLER, LTD.**

By: /s/ Lauren M. Burnette
LAUREN M. BURNETTE, ESQUIRE
PA I.D. No. 92412
12276 San Jose Blvd.
Suite 720
Jacksonville, FL 32223
(904) 527-1172
(904) 683-7353 (fax)
lburnette@messerstrickler.com
Counsel for Portfolio Recovery Associates, LLC

Dated:  October 29, 2018

**CERTIFICATE OF SERVICE**

I certify that on October 29, 2018, I served a true and correct copy of the foregoing document on all counsel of record *via* CM/ECF.

**MESSER STRICKLER, LTD.**

By: /s/ Lauren M. Burnette
LAUREN M. BURNETTE, ESQUIRE
PA I.D. No. 92412
12276 San Jose Blvd.
Suite 720
Jacksonville, FL 32223
(904) 527-1172
(904) 683-7353 (fax)
lburnette@messerstrickler.com
Counsel for Portfolio Recovery Associates, LLC

Dated:  October 29, 2018