# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT J. POZZUOLO, and All Others Similarly Situated** | : : : | **CIVIL ACTION** |
| **v.** | : : | |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC** | : : | **NO. 18-1797** |

## MEMORANDUM OPINION

**Savage, J.** April 9, 2019

In this putative class action brought under the Fair Debt Collection Practices Act (FDCPA),[1] we must determine whether the plaintiff suffered an injury-in-fact necessary to confer standing. The issue is whether one who has not suffered actual harm or was not at risk of harm as a result of a procedural violation of 15 U.S.C. § 1692g has standing to assert a claim for that violation. We hold that he does not.

Plaintiff Robert J. Pozzuolo alleges that the defendant debt collector, Portfolio Recovery Associates, LLC (PRA), sent him an initial collection letter that violated the validation notice requirement of § 1692g. The letter advised him that he could dispute the debt by telephoning PRA even though only a written dispute suffices to trigger the debt collector's obligations under § 1692g(b) to cease collection and provide verification of the debt to the consumer.

In moving to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), PRA argues that Pozzuolo does not have standing because he has not suffered and was not at risk of suffering a concrete injury. It cites Pozzuolo's deposition testimony that he merely skimmed the letter and had no intention to dispute the debt. PRA also contends

---

[1] 15 U.S.C. §§ 1692-92p (2006).

1

that there was no risk of harm because it treats telephonic and written disputes the same. PRA maintains that the validation notice informing Pozzuolo that he could dispute the debt telephonically was a mere procedural violation of § 1692g(a).

We conclude that Pozzuolo lacks standing. Because he never intended to dispute the debt, PRA's violation of § 1692g by failing to inform him that only written disputes are legally effective neither harmed him nor created a material risk of harm. Therefore, we shall grant PRA's motion to dismiss.

## Facts

On March 30, 2018, PRA sent Pozzuolo a collection letter regarding a debt originally owed to Capital One Bank (USA), N.A.[2] A box in the center of the page included the following validation notice:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.[3]

Although this part of the letter clearly stated that a dispute had to be in writing, another part advised that a telephone call was sufficient. The bottom of the page directed Pozzuolo to the back of the letter: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT

---

[2] Compl. ¶ 14, Ex. A (Doc. No. 1). A copy of this letter is attached hereto as Exhibit A.

[3] *Id.*, Ex. A at 1.

INFORMATION[.]"[4]  On the back, there were several notices, including one that read: "**DISPUTES:** Call 1-800-772-1413 or write to: Portfolio Recovery Associates, LLC, Disputes Department, 140 Corporate Blvd., Norfolk, VA 23502[.]"[5]  Thus, read in its entirety, the letter gave Pozzuolo two options for disputing the debt – orally or in writing.

PRA's corporate designee, Susan Guevara, testified that if a consumer submits a written dispute, PRA immediately begins the debt verification process.[6]  *See* 15 U.S.C. § 1692g(b).  If a consumer calls with questions about a debt, the associate reviews the account statements with the consumer.[7]  If the consumer indicates at any point that he disputes the debt, the conversation ends and PRA begins the verification process.[8]  If the consumer does not dispute the debt while the associate is reviewing the statements with him, the associate asks at the conclusion of the review if he disputes the debt.[9]  If the consumer responds affirmatively, the conversation ends and the verification process proceeds.[10]

Guevara's testimony is not consistent with PRA's Account Representative Training Manual (Manual).  According to the Manual, the conversation with the consumer does not immediately end if the consumer disputes the debt.[11]  The representative does not accept

---

[4] *Id.*

[5] *Id.* Ex. A at 2 (emphasis in original).

[6] Opp'n to Mot. to Dismiss (Doc. No. 17) Ex. 1, 131:21-132:2.

[7] *Id.* Ex. 1, 130:24-131:13.

[8] *Id.* Ex. 1, 132:7-9, 14-22.

[9] *Id.* Ex. 1, 131:6-15.

[10] *Id.* Ex. 1, 131:15-17.

[11] *Id.* Ex. 3 at 41.

the consumer's dispute. Instead, she challenges the consumer. She responds, "Let me review your account documents," then reviews the details of the consumer's account documents.[12] The representative next asks, "Now that we have reviewed the supporting documentation associated with your account are you still disputing the account?"[13] The customer must respond "Yes or No."[14] Only if the customer responds affirmatively does the representative submit the dispute.[15]

Pozzuolo testified at his deposition that as he does with all collection letters he receives, he "scan[ned] over" the letter and forwarded it to the law firm representing him in this matter.[16] He did not contact PRA or any of the credit reporting agencies about it.[17] Although he did "not enjoying seeing" it, the letter caused him no damages.[18] He concedes the validity and the amount of the debt.

**Standard of Review**

A motion to dismiss brought pursuant to Rule 12(b)(1) is treated similarly to a Rule 12(b)(6) motion. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Whether a Rule 12(b)(1) motion presents a "facial" or a "factual" attack dictates the scope of review. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A facial challenge asserts an insufficiency on the face of the complaint. *Id.* A factual attack

---

[12] *Id.* Ex. 3 at 44.

[13] *Id.* Ex. 3 at 44.

[14] *Id.* Ex. 3 at 44.

[15] *Id.* Ex. 3 at 44.

[16] Mot. to Dismiss Ex. A (Doc. No. 14-2), 16:22-17:1, 17:18-20.

[17] *Id.* Ex. A, 47:12-48:14.

[18] *Id.* Ex. A, 32:3-12.

4

is "an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

PRA makes a factual challenge. It argues that the facts revealed in discovery show Pozzuolo suffered no injury-in-fact, an element essential to establish standing.

In a factual challenge, the defendant disputes the allegations on which jurisdiction depends. Unlike in considering a facial challenge, the court must weigh the evidence and evaluate the merits of the claim. *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). No presumptive truthfulness attaches to the plaintiff's allegations. *Id.* Thus, a district court may consider evidence outside the pleadings. *CNA*, 535 F.3d at 145; *Gould Elecs. Inc.*, 220 F.3d at 176 (citation omitted).

**Analysis**

Standing limits who can maintain a case in federal court. In the absence of standing, a plaintiff has no "case" or "controversy" empowering the federal court to exercise jurisdiction. U.S. CONST. art. III, § 2.

To establish standing, the plaintiff must show that he (1) suffered an injury-in-fact or "an invasion of a legally protected interest," (2) that is fairly traceable to the defendant's conduct, and (3) is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robbins*, -- U.S. --, 136 S. Ct. 1540, 1548-50 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 322-23 (3d Cir. 2018).

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*,

5

504 U.S. at 560 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (additional quotations and citations omitted).

Addressing the "concrete" injury requirement, the *Spokeo* court explained that a concrete injury is "de facto," "real, and not abstract." *Spokeo*, 136 S. Ct. at 1548 (citations omitted). Even the "risk of real harm," including harm that is difficult to prove or measure, may satisfy the requirement. *Id.* at 1549 (citations omitted). Concrete does not necessarily mean "tangible," as "intangible injuries can nevertheless be concrete." *Id.* (citations omitted).

A violation of a statute alone may satisfy the injury-in-fact requirement. *In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, 846 F.3d 623, 635 (3d Cir. 2017). The Supreme Court has long recognized that Congress has the prerogative to grant individuals the right to sue to enforce statutory rights. *Id.* (citations omitted). However, Congress' power to make a statutory violation cognizable "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Even when a statute is violated, standing still requires an injury-in-fact. "A bare procedural violation, divorced from any concrete harm," will not suffice. *Id.* On the other hand, "where the statutory violation is 'the very harm that Congress sought to prevent,' the violation of a statutorily created procedural right may constitute an injury-in-fact." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)). In such cases, the plaintiff need not allege "any *additional* harm" beyond what Congress has identified. *Horizon Healthcare*, 846 F.3d at 635 (emphasis in original) (citations omitted).

Rather than establishing a bright line rule, the *Spokeo* Court used examples of what "circumstances" would give rise to an injury-in-fact and what would not. It cited two cases where violations of statutorily created procedural rights constituted concrete injury without the need for any additional harm. *See id.* at 1549-50 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998); *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440 (1989)). Both cases involved the inability to obtain information related to the political process Congress made subject to public disclosure. *See Akins*, 524 U.S. at 24-25 ("the informational injury at issue here, directly related to voting, the most basic of political rights, is sufficiently concrete and specific"); *Pub. Citizen*, 491 U.S. at 449 (refusal to permit advocacy groups to obtain information about American Bar Association's advice to Department of Justice subject to disclosure under Federal Advisory Committee Act "constitute[d] a sufficiently distinct injury to sue").

The court provided two examples of procedural violations under the Fair Credit Reporting Act (FCRA) that would not rise to the level of concrete harm. First, a consumer would suffer no concrete harm where a credit reporting agency provided accurate information about a consumer but failed to provide the required notice to the user of the information. *Spokeo*, 136 S. Ct. at 1550. Second, the provision of an incorrect zip code, without more, would not likely constitute a concrete harm, even though in passing the FCRA "Congress plainly sought to curb the dissemination of false information" about consumers. *Id.*

In *Spokeo*, the defendant inaccurately reported the plaintiff's age, wealth, family, employment and education. *Id.* at 1546. The Court did not decide whether the disclosure of this inaccurate information "entail[ed] a degree of risk sufficient to meet the

concreteness requirement" absent additional harm. *Id.* at 1550. It remanded the case to the circuit court to make that determination. *Id.*

On remand to determine whether the procedural violation alone established concrete harm, the Ninth Circuit adopted the two-part test set forth by the Second Circuit in *Strubel v. Comenity Bank*. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (*Spokeo II*) (citing *Strubel*, 842 F.3d 181, 190 (2d Cir. 2016)). In applying that test, the court asks: "(1) whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id. See also Strubel*, 842 F.3d at 190 (citing *Spokeo*, 136 S. Ct. at 1549). It noted that the Fourth and Sixth Circuits had engaged in similar analyses when considering whether a procedural violation by itself arose to a concrete injury. *Spokeo II*, 867 F.3d at 1113 (citing *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017); *Lyshe v. Levy*, 854 F.3d 855, 869 (6th Cir. 2017)) (additional citations omitted).

The Third Circuit made it clear, in *Kamal v. J. Crew Group, Inc.*, that it applies the *Strubel/Spokeo II* test: "We—like several of our sister circuits—understand *Spokeo* 'to instruct that an alleged procedural violation . . . manifest[s] concrete injury' if the violation actually harms or presents a material risk of harm to the underlying concrete interest."[19] 918 F.3d 102, 112-13 (3d Cir. 2019) (quoting *Strubel*, 842 F.3d at 190; citing *Spokeo II*,

---

[19] The court explained that it did not apply a "material risk of harm" approach in *Horizon Healthcare* because "the alleged injury in *Horizon*—unauthorized dissemination of private information—could 'itself constitute a cognizable injury,' and was 'the very injury that FCRA [was] intended to prevent[.]'" *Kamal*, 918 F.3d at 113 n.3 (quoting *Horizon Healthcare*, 846 F.3d at 638-40).

8

867 F.3d at 1115; *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016)) (additional citations omitted). This test requires the plaintiff to "'clearly and specifically set forth facts' showing a risk of harm particular to" him.[20] *Kamal*, 918 F.3d at 116 (quoting *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011)) (additional citation omitted).

PRA's letter to Pozzuolo constituted a procedural violation of the FDCPA. A debt collection letter, like the one here, that "creates the impression that the debtor can dispute the debt by calling the debt collector" violates § 1692g. *Homer v. Law Offices of Frederick I. Weinberg & Assocs., P.C.*, 292 F. Supp. 3d 629, 632 (E.D. Pa. 2017).

Even though there was a violation of § 1692g, Pozzuolo cannot show actual harm or a material risk of harm. By his own admission, he was not "hurt as a result of receiving this letter."[21] Indeed, he merely "scan[ned] over" the letter before forwarding it to counsel.[22] Although the letter stated that he could call or write PRA to dispute the letter,

---

[20] "The leading treatise observes '[t]he persisting obscurity of doctrine in this area,' and notes that *Spokeo* 'does little to relieve the uncertainty surrounding the Article III theories that limit Congressional authority to create a new legal right, invasion of which supports standing.'" *Macy*, 897 F.3d at 754 (citing 13B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3531.13 (3d ed. 2017)). These differing approaches have caused disagreement as to whether a violation of § 1692g constitutes a concrete injury without the need for additional harm. A line of cases stemming from *Jackson v. Abendroth & Russell, P.C.*, have held that the failure to advise a consumer that communications must be in writing to be legally effective does not constitute a concrete injury where the consumer never intended to dispute or validate the debt. 207 F. Supp. 3d 945, 949 (S.D. Iowa 2016); *see also Abercrombie v. Rogers, Carter, & Payne, LLC*, No. 15-2214, 2016 WL 8201965, at *5 (W.D. La. Nov. 22, 2016) (citing *Jackson*, 207 F. Supp. 3d 945), *report and recommendation adopted by* 2017 WL 489426 (W.D. La. Feb. 5, 2017); *Perry v. Columbia Recovery Grp.*, No. C16-0191JLR, 2016 WL 6094821, at *8 (W.D. Wash. Oct. 19, 2016) (citing *Jackson*, 207 F. Supp. 3d 945). Other courts have held that a violation of § 1692g alone suffices to confer standing on the consumer. *See, e.g., Macy*, 897 F.3d at 759; *Kausar v. GC Servs. Ltd. P'ship*, No. 15-6027, 2017 WL 5175596, at *2 (D.N.J. Nov. 8, 2017); *Dunham v. Robert Crane & Assocs., LLC*, No. 1:16-cv-02100-SEB-MPB, 2017 WL 1423957, at *4 (S.D. Ind. Apr. 19, 2017), *report and recommendation adopted by* 2017 WL 2664287 (June 20, 2017); *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, No. PX-16-1053, 2016 WL 6803775, at *8 (D. Md. Nov. 17, 2016); *Dickens v. GC Servs. Ltd. P'ship*, No. 16-0803, 2016 WL 3917530, at *1-2 (M.D. Fla. July 20, 2016).

[21] Mot. to Dismiss Ex. 1, 32:3-5.

[22] *Id.* Ex. A, 16:22-17:1, 17:18-20.

9

Pozzuolo did neither.[23] Nor did he dispute the debt with any of the credit reporting agencies.[24] He had no reason to do so. He acknowledges the debt and the amount.[25] Thus, because he never intended to dispute the debt, the violation did not harm or present a material risk of harm to Pozzuolo.

**Conclusion**

Although PRA's collection letter to Pozzuolo violated § 1692g, Pozzuolo cannot demonstrate a concrete injury. Therefore, he lacks standing.

---

[23] *Id.* Ex. A, 47:12-14.

[24] *Id.* Ex. A, 48:9-14.

[25] *Id.* Ex. A, 47:15-48:8.

10